# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE RAIMON DEYON, | Case No. 1:20-cv-01532-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I.   INTRODUCTION

Plaintiff Andre Raimon Deyon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 14.)

## II. BACKGROUND

On October 3, 2017, Plaintiff protectively applied for DIB payments, alleging he became disabled on March 28, 2014, due to "bulging disk in lower back, protruding and herniated disks up the spine, chronic pain, [and] high blood pressure." (Administrative Record ("AR") 22, 80, 81, 82, 92, 93, 206, 213, 216, 235.) Plaintiff was born on August 15, 1977, and was 36 years old on the alleged disability onset date. (AR 27, 80, 92, 213, 216, 235.) Plaintiff has a high school education and can communicate in English. (AR 27, 51, 205, 207.)

**A.     Relevant Evidence of Record[3]**

**1.     Medical Evidence**

Plaintiff reported injuring his back lifting boxes in December 2013. (AR 313, 397, 633, 936.) In September 2014, Plaintiff was assessed with a lumbar disc protrusion at L5-S1. (AR 528.) An MRI performed in October 2014 showed an 8mm left paracentral disc protrusion displacing and compressing the traversing left S1 nerve root. (AR 523–24, 528.) In December 2014, Plaintiff underwent a microdiscectomy at L4-S1. (AR 525–27.)

In June 2015, Plaintiff presented for a follow up appointment following his back surgery. (AR 461–65.) He reported that he was "better since [surgery]," and a pain level at 3–4 out of 10. (AR 461.) A physical examination showed some limitation in range of motion in Plaintiff's lumbar spine, with a negative straight leg raising test, normal (5/5) motor strength, and normal sensation. (AR 461–62.)

Plaintiff presented for another follow up in July 2015, when he complained of "constant aching" pain in his back that increases with bending and lifting. (AR 456–460.) He rated his pain level as a 2–3 out of 10. (AR 456.) On physical examination, Plaintiff's thoracolumbar range of motion was normal, with no focal area of tenderness on palpation to the lumbar spine. (AR 529.) No muscle spasms or nodularities were noted. (AR 529.) He also had normal reflexes, full strength, negative straight leg raising test, and normal gait. (AR 529–30.) Orthopedist Richard E. Nussbaum, M.D., deemed Plaintiff "permanent and stationary/maximally medically improved."

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

(AR 530.) He observed that "[t]here is occasional minimal to slight back pain in the activities of daily living, becoming intermittently slight to moderate." (AR 531.)

In February 2017, Plaintiff complained of moderate back pain. (AR 278.) He reported that his sciatica "disappeared after surgery," and was assessed with "[c]hronic bilateral low back pain without sciatica." (AR 280, 282.) Plaintiff's physical examination was normal, with normal sensation. (AR 280.) An x-ray taken that month showed "S-shaped scoliosis of the thoracolumbar spine" and "[s]ignificant disc space narrowing" at L5-S1 level. (AR 309.)

Plaintiff reported a pain severity level of "7" in June 2017, and described the problem as "fluctuating" with no radiation of pain. (AR 267.) A physical examination showed "severely reduced" range of motion in his lumbar spine and a muscle spasm, but was otherwise normal, with negative straight leg test, no radiculopathy, and grossly intact cranial nerves. (AR 270.)

An MRI performed in September 2017 showed a left laminotomy defect at L5; degenerative change; bulging disc and facet hypertrophy; mild canal, moderate left, and mild to moderate right-sided foraminal stenosis; and degenerative changes in the sacroiliac joints bilaterally. (AR 963.) In October 2017, Plaintiff reported seeing a pain specialist and planned to get injections for his "skyrocketing" pain. (AR 262–66.) A physical exam showed moderately reduced range of motion in the right side when in a "forward fold position" and a muscle spasm. (AR 265.) Plaintiff was assessed with "[c]hronic bilateral low back pain without sciatica" and "[b]ack muscle spasm." (AR 266.) Plaintiff underwent steroid injections in his lumbar spine in November and December 2017. (AR 373–74, 422, 545–56.)

In April 2018, Plaintiff reported "[o]ccasionally [doing] door-to-door work as part of Jehovah's Witness." (AR 738.) Plaintiff presented for pain management treatment in July 2018, complaining of lower back pain rated "8/10." (AR 767–78.) He stated that he walks in his house, and can walk "about a street for door to door." (AR 769.) On physical examination, Plaintiff's gait was normal, with heel walking noted as "unstable" because of back pain. (AR 771.) Limited range of motion was noted in Plaintiff's back due to pain. (AR 771.) His motor strength was normal, no asymmetry or atrophy noted, and his sensation was intact. (AR 771.) Straight leg raising test was negative. (AR 771.)

3

In January 2019, Plaintiff's back pain was "back to base line." (AR 781–91.) Plaintiff's gait and heel walking were normal, and limited range of motion in his low back "mainly while twisting" was noted. (AR 783.) He showed normal sensation and neurologic function. (AR 783–84.) It was noted that Plaintiff is "[f]unctionally better in how he walks and how much tenderness he has." (AR 784.)

In February 2019, Plaintiff reported normal activity level and that his "treatment plan allows [him] to remain functional," with no side effects. (AR 793.) An x-ray of Plaintiff's lumbar spine performed in June 2019 showed "S-shaped scoliosis of the spine" (AR 799.) Plaintiff underwent medical branch blocks in his lumbar spine in July and November 2019. (AR 827–55, 990–1014.) In November 2019, he again reported his "treatment plan allows [him] to remain functional," his activity level is normal, that his pain is "significantly better," and he is "able to be more functional with the [medical branch block] injection." (AR 961.) Plaintiff denied numbness, tingling, or weakness. (AR 961.)

**2.   Opinion Evidence**

In finding Plaintiff "permanent and stationary/maximally medically improved" in July 2015, Dr. Nussbaum found Plaintiff was precluded from "heaving lifting and repeated bending and stooping," in that he has "lost approximately half of the pre-injury capacity for lifting, bending, and stooping." (AR 531.)

In December 2017, M. Bijpuria, M.D., a state agency physician, reviewed the record and assessed Plaintiff's residual functional capacity (RFC).[4]  (AR 87–88.) Dr. Bijpuria found that Plaintiff could occasionally lift and/or carry 20 pounds and frequently 10 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; perform unlimited pushing and pulling, subject to the lift-and-carry restrictions; occasionally climb

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; and avoid concentrated exposure to hazards.  (AR 87–88.)  Upon reconsideration in March 2018, another state agency physician, M. Ormsby, M.D., reviewed the record and found that Plaintiff could occasionally lift and/or carry 50 pounds and frequently 25 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally perform bilateral extremity pushing and pulling; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; and avoid concentrated exposure to extreme cold, vibration, and hazards.  (AR 97–99.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on December 20, 2017, and again on reconsideration on March 9, 2018.  (AR 103–106, 113–18.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 121–36.)

On January 8, 2019, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions.  (AR 46–72.)  A vocational expert ("VE") also testified at the hearing.  (AR 72–78.)

   **1.     Plaintiff's Testimony**

At the hearing, Plaintiff testified he remains unable to work due to lower back pain.  (AR 54.)  He stated that the severity of his pain is a "9" on a scale of 1 to 10, and it prevents him from doing any work.  (AR 64.)  Plaintiff testified he continued to have back pain after his surgery in 2014, and the pain worsened in 2016 and 2017.  (AR 54, 63, 65.)  He stated that he needs to be very "methodical" when he moves or does anything and is concerned that if he moves "wrong," he will aggravate his condition.  (AR 58–59.)  According to Plaintiff, if he bends for too long, he will feel a "pull or a twinge" and then have "immediate back pain."  (AR 59.)  If he overdoes things, he will be "down" for a week with back pain.  (AR 64.)

Plaintiff drives to pick his daughter up from school every day.  (AR 56.)  According to Plaintiff, he gives public talks as a Jehovah's Witness and has spent four hours typing his speeches on his laptop.  (AR 56.)  He would also "sometimes" do door to door witnessing activities for about an hour, although he had not done that in some time.  (AR 56–57.)  He stated he can only

stand or sit for an hour at a time. (AR 69, 70.)

### 2. Vocational Expert's Testimony

The VE testified that Plaintiff had past relevant work as a warehouse worker ("stores laborer"), Dictionary of Operational Titles ("DOT") code 922.687-058, with a medium exertional level and a specific vocational preparation (SVP)[5] of 2. (AR 73.) The ALJ asked the VE to consider a person of Plaintiff's age and education, and work experience, and that this person could perform light work; occasional postural activities; no climbing of ladders, ropes, and scaffolds; occasional use of bilateral foot controls; and must avoid concentrated exposure to extreme cold, vibration, unprotected heights, and dangerous machines. (AR 73.) The VE testified that such a person could not perform Plaintiff's past relevant work, but they could perform other, light positions under the DOT in the national economy, such as a small products (bench) assembler, DOT code 706.684-022; a cashier II, DOT code 211.462-010; and a fast-food worker, DOT Code 311.472-010. (AR 74.)

In a second hypothetical, the VE was asked by the ALJ to consider the same person as in the first hypothetical, but with sedentary exertional capacity instead of light. (AR 74.) The VE testified that no prior work would be available, but that such a person could perform other, sedentary positions under the DOT in the national economy, such as telephone solicitor, DOT code 299.357-014 and SVP 2; a cashier II, DOT code 211.462-010 and SVP 2; and a charge account clerk, DOT Code 205.367-014 and SVP 2. (AR 74–75.) In third and fourth hypotheticals, the ALJ asked the VE to consider the person presented in the second hypothetical, but who would be absent one day out of the workweek and off task 15% of the workday, respectively. (AR 75–76.) The VE responded there would be no work such a person could perform. (AR 76–77.)

In a fifth hypothetical, Plaintiff's counsel asked the VE to consider the same person as in the second hypothetical, but who could only stand and walk three hours in an eight-hour day and

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

require four to five unscheduled breaks of 10 to 15 minutes in duration a day. (AR 77.) The VE testified there was no work such a person could perform. (AR 77–78.)

**C.     The ALJ's Decision**

In a decision dated March 3, 2020, the ALJ found that Plaintiff was not disabled. (AR 20–38.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 22–29.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 28, 2014, the alleged onset date (step one). (AR 22.) At step two, the ALJ found the following impairment severe: degenerative disc disease and scoliosis. (AR 22–24.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 24.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) except he can only occasionally operate foot controls bilaterally; can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; and must avoid concentrated exposure to extreme cold, vibration, and hazards (i.e., unprotected heights, dangerous machines).

(AR 24–27.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 25.)

The ALJ determined that Plaintiff was unable to perform his past relevant work (step 4), but was not disabled because, given his RFC, he could perform a significant number of other jobs in the local and national economies, specifically small products assembler, cashier, and fast-food worker (step 5). (AR 27–28.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on August 26, 2020. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the

Commissioner.  20 C.F.R. § 404.981.

### III. LEGAL STANDARD

#### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of

the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"

*Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends there is no substantial evidence to support the ALJ's RFC assessment because the ALJ "failed to obtain an updated opinion regarding Plaintiff's functionality." (Doc. 18 at 13–17; *see also* Doc. 22 at 1–3.) Plaintiff asserts that the assessments of his limitations by the State agency non-examining medical consultants were "stale" because they did not account for subsequent medical records. (Doc. 18 at 13–15.) Plaintiff submits the ALJ should have "obtain[ed] a medical opinion that could interpret Plaintiff's most recent raw medical data into functional limitations." (*Id*. at 13.) Instead, the ALJ relied on their lay interpretation of the subsequent medical evidence and erred in failing to develop the record further, requiring remand for further administrative proceedings. (*See* Doc. 18 at 13–14; Doc. 22 at 3.) Plaintiff further asserts the ALJ erred in discounting his subjective symptom testimony. (*See* Doc. 18 at 17–21; Doc. 22 at 3–5.)

The Commissioner responds that the ALJ was under no duty to develop the record in this case and their RFC assessment was based on substantial evidence. (Doc. 21 at 18–23.) The Commissioner further contends that the ALJ properly evaluated Plaintiff's subjective symptom statements. (*Id*. at 23–27.)

The Court addresses the parties' contentions below, and finds that reversal is not warranted.

**A.   Plaintiff's Challenge to the Record Does Not Constitute Reversible Error**

**1.   The ALJ Had No Duty to Develop the Record**

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation.

The ALJ summarized medical evidence spanning 2013 through 2019 and found with the support of the record that Plaintiff had not established he was disabled. (AR 22–23, 25–27.) The record contained what appears to be Plaintiff's complete treatment records that supported the ALJ's

10

findings and did not present an ambiguity or inadequacy. Notably, Plaintiff failed to submit any medical opinions from a treating or examining physician to support his claimed functional limitations. Because it is Plaintiff's burden to present evidence of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record; instead, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless [they] furnish[] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are . . . disabled . . . .").

Contrary to Plaintiff's assertion, an updated opinion is not required simply because additional medical evidence is received after the state agency physicians had already reviewed Plaintiff's records. *See de Hoog v. Comm'r of Soc. Sec.*, No. 2:13–CV–0235–KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014). Such an occurrence is quite common. *See id.* (explaining that "[i]n virtually every case further evidence is received after the state agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing. For that very reason, the ALJ is tasked with considering the evidence in the record as a whole."). This is also not a case where subsequent "objective evidence suggest[ed] a condition that could have a material impact on the disability decision." *Molina v. Berryhill*, No. 2:17-CV-01991 CKD, 2018 WL 6421287, at *3 (E.D. Cal. Dec. 6, 2018). *Cf. Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (subsequent medical evidence giving rise to duty to develop the record documented "significant medical events relevant to plaintiff's physical condition.") By contrast, the records Plaintiff directs the Court to review show relatively normal findings that undermine Plaintiff's complaints of pain, are followed by documented improvement, and/or, to some extent, are based on subjective complaints like those discredited by the ALJ. For example, Plaintiff cites to a medical record in which he reports

"skyrocketing" pain in October 2017 (AR 262) and physical examination results from January, March, and July 2018 showing limited range of motion in his lumbar spine (AR 404, 719). Some of these same records, however, observe that the "severity of [Plaintiff's] pain is out of proportion of the MRI results" (AR 402), which are described as "mild" (AR 720). More importantly, this and subsequent objective medical evidence from 2018 and 2019 shows normal gait and heel walking, normal sensation and neurologic function, and normal motor strength. (AR 771, 783–84.) Medical records from January 2019 indicate that Plaintiff is "[f]unctionally better in how he walks and how much tenderness he has." (AR 784.) Indeed, in some of the records from 2019 cited by Plaintiff in his briefing, Plaintiff himself states his "treatment plan allows [him] to remain functional," his activity level is normal, and his pain is "significantly better." (AR 793, 961.) Plaintiff's testimony demonstrates he is able to sit for four hours, walk for an hour, and drive to pick up his daughter daily. (AR 56.)

In sum, none of the evidence cited by Plaintiff establishes the existence of any new condition not assessed by the ALJ, or shows a worsening of Plaintiff's existing conditions. Plaintiff does not demonstrate otherwise. The Court therefore finds that the ALJ was not obligated to further develop the record.

**2.     The ALJ Did Not Err in Formulating Plaintiff's RFC**

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Further, an ALJ's RFC determination need not precisely reflect any particular physician's assessment. *See, e.g., Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

In criticizing the ALJ's failure to develop the record—which the Court has already rejected—Plaintiff contends that the RFC was the result of the ALJ improperly imposing their own

lay interpretation of the medical evidence. (*See* Doc. 18 at 16–17.) This contention is unavailing.

The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Such a responsibility does not result in the ALJ committing legal error when they assess an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

According to the record, the only expert medical opinions regarding Plaintiff's impairments are those of Dr. Nussbaum (AR 531) and State agency physicians Drs. Bijpuria (AR 87–88) and Ormsby (AR 97–99). The ALJ considered these persuasiveness of these opinions, as the ALJ is charged to do,[6] and rejected a limitation to "medium" exertional activity, finding instead that the opinions—as well as the Plaintiff's "objective clinical presentation, course of treatment, and reported activities" that post-dated the opinions—supported a "light" exertional limitation. (AR 26–27.) The ALJ then formulated Plaintiff's RFC, which included additional physical limitations beyond those found by the opining physicians. (*Compare* AR 531, 87–88 and 97–99 *with* AR 24–27.)[7] *See Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."). *See also* 20 C.F.R. § 404.1527(d)(2) ("the final responsibility for deciding [RFC] is reserved to the Commissioner), § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").

In contrast to the cases cited by Plaintiff (*see* Doc. 18 at 16), this is not a situation where all

---

[6] On January 18, 2017, the Social Security Administration published revisions to its regulations regarding the evaluation of medical evidence. See REVISIONS TO RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844-01, 2017 WL 168819 (January 18, 2017). For applications, like Plaintiff's, filed on or after March 27, 2017, the new regulations state an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ is to evaluate opinions by considering their "persuasiveness." *Id.*

[7] The ALJ's RFC assessment is also based on consideration of the subjective complaint testimony, which, as set forth more fully below, the ALJ properly discredited.

13

of the opinion evidence in the record has been wholly discounted, resulting in an RFC determination apparently based solely on treatment notes and the plaintiff's testimony. *Cf. Vasquez v. Comm'r of Soc. Sec.*, No. 1:18-CV-01042-EPG, 2019 WL 3714565, at *4 (E.D. Cal. Aug. 7, 2019); *Shipp v. Colvin*, No. CV 13-9468 JC, 2014 WL 4829035 (C.D. Cal., Sept. 26, 2014). Here, the ALJ evaluated the medical evidence as well the opinions of Drs. Nussbaum, Bijpuria, Ormsby. As set forth above, the ALJ did not reject their opinions outright, but instead found that they, in consideration with the subsequent medical record, supported a more restrictive RFC than a "medium" exertional activity level. Plaintiff does not specify what additional functional limitations in the records that he directs the Court to review establish that were not accounted for in the ALJ's RFC assessment. Nor does he otherwise show any inconsistency between this evidence and his RFC. Instead, it appears that Plaintiff is advocating for an alternative interpretation of the evidence he cites in his briefing. The Court, however, will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Molina*, 674 F.3d at 1110.

In sum, the Court does not find error in the ALJ's reliance on the opinions of the state agency physicians and finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC. Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**3.     Even if the ALJ Erred, Any Error is Harmless**

In addition to bearing the burden of showing he is disabled, Plaintiff has the burden of establishing that any error resulted in actual harm. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054–55 (9th Cir. 2012). An "ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *See Molina*, 674 F.3d at 1115 (quotation marks and citations omitted)); *Garcia v. Comm of Soc. Sec.*, 768 F.3d 925, 932 & n.10 (9th Cir. 2014) (harmless error analysis applies where ALJ errs by not discharging duty to develop record).

Here, even assuming the RFC was unsupported by substantial evidence because the ALJ

failed to further develop the record as to certain findings made after the state agency review, Plaintiff fails to show prejudice. *See Meanel*, 172 F.3d at 1113; *Molina*, 674 F.3d at 1115. Specifically, Plaintiff fails to explain how any of the relatively unremarkable evidence post-dating the state agency physicians' opinions, described above, would materially affect the ALJ's disability determination. According to the VE, even a limitation to *sedentary* exertional activity level would not preclude all work. (AR 74–75.) In fact, the only restrictions that would preclude all work for Plaintiff as testified by the VE would be: (1) an additional limitation to being absent one day a week; (2) an additional limitation to being off task 15% of the workday; or (3) additional limitations of standing and walking three hours in an eight-hour day and requiring four to five unscheduled breaks of 10 to 15 minutes in duration a day. (AR 77–78.) Plaintiff has not demonstrated that any of these restrictions are provided for or otherwise supported by the objective evidence he cites. Thus, any error does not warrant reversal.

**B.     The ALJ Properly Found Plaintiff Less Than Fully Credible**

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that [their] impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[8]  *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's

---

[8] The Court rejects the Commissioner's contention that a lesser standard of review applies. (*See* Doc. 21 at 18 n.9.)

15

>  reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which they complain. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2.    Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," yet rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 25.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Had the ALJ's statement that Plaintiff's subjective testimony was inconsistent with the medical record been the end of discussion, Plaintiff's argument that the ALJ erred by "failing to provide clear and convincing reasons for finding that Plaintiff's statements were inconsistent with the evidence" (Doc. 18 at 13), and reliance on *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015), might have merit. However, the ALJ continued the analysis—with references to Plaintiff's subjective complaints—explaining that "subsequent medical evidence consistently indicates [Plaintiff's] surgery was largely successful in alleviating his symptoms"; the evidentiary record is

not "consistent with ***[Plaintiff's] allegation*** that his back pain worsened in 2016"; "the existing medical records show [Plaintiff's] objective clinical presentation remained largely unchanged upon his resumption of treatment in 2017"; "the updated medical evidence similarly fails to show that [Plaintiff's] back condition has been ***so severe as to preclude any/all work***"; and "the updated medical records show [Plaintiff] has acknowledged being 'significantly better' in terms of pain following the above-referenced injections as well as 'functionally better in how he walks and how much tenderness he has.'" (AR 25–26 (emphasis added).)

With each finding, the ALJ summarized the pertinent portions of, or noted gaps in, the medical record. (AR 25–26.) For example, in the months following his surgery in December 2014, Plaintiff reported that he was "better since [surgery]," and physical examinations showed Plaintiff's thoracolumbar range of motion was normal, with no focal area of tenderness to the lumbar spine or muscle spasms. (AR 461–62, 529.) He also had normal reflexes, full strength, negative straight leg raising test, and normal gait. (AR 461–62, 529–30.) Years later, in February 2017, Plaintiff reported that his sciatica "disappeared after surgery," and his physical examination was normal, with normal sensation. (AR 280, 282.) A physical examination of Plaintiff in April 2018 showed his gait was normal, with heel walking noted as "unstable" because of back pain. (AR 771.) His motor strength was normal, no asymmetry or atrophy noted, and his sensation intact. (AR 771.) Straight leg raising test was negative. (AR 771.) In January 2019, Plaintiff 's gait and heel walking were normal, and limited range of motion in his low back "mainly while twisting" was noted. (AR 783.) He showed normal sensation and neurologic function. (AR 783–84.) It was noted that Plaintiff is "[f]unctionally better in how he walks and how much tenderness he has." (AR 784.) Plaintiff reported normal activity level and that his "treatment plan allows [him] to remain functional," with no side effects in February 2019. (AR 793.) In November 2019, Plaintiff again reported his "treatment plan allows [him] to remain functional," his activity level is normal, that his pain is "significantly better," and he is "able to be more functional with the [medical branch block] injection." (AR 961.)

In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when their symptoms can be controlled by treatment and/or medication. *See* 20 C.F.R. §

17

404.1529(c)(3)(iv)–(v); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for [disability] benefits."). Here, there is substantial evidence in record, as set forth above, that Plaintiff's physical condition improved following both his microdiscectomy and his treatment with injections and medical branch blocks. Plaintiff's improvement with treatment is a clear and convincing reason for discounting his subjective symptom testimony. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment).

In addition, "[a]n ALJ may properly discount a plaintiff's credibility based on an unexplained failure to seek treatment consistent with the alleged severity of the subjective complaints." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). As the ALJ noted (AR 25), although Plaintiff testified his back pain worsened beginning in 2016 (AR 54, 63, 65), there is no evidence in the medical record of any further treatment of Plaintiff's back pain between July 2015 and February 2017. The ALJ was therefore entitled to discount Plaintiff's credibility based on this gap in his treatment record.

Lastly, it is appropriate for an ALJ to consider a claimant's activities that undermine claims of severe limitations in making the credibility determination. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Rollins*, 261 F.3d at 857; *see also Thomas*, 278 F.3d at 958–59 (an ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies between the claimant's complaints and the claimant's activities.). It is well-established that a claimant need not "vegetate in a dark room" to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). If a claimant, however, can spend a substantial part of their day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disability. *Fair*, 885 F.2d at 603. "Even where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds

for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, Plaintiff alleges an inability to work due to his low back pain—the severity of which he rates as a nine out of ten. (AR 64.) According to Plaintiff, he can only stand or sit for an hour at a time and if he does "overdoes" things he will be "down" for a week with back pain. (AR 64, 69, 70.) Despite these alleged severe limitations, the hearing testimony shows that Plaintiff drives a car and picks up his daughter from school every day. (AR 56.) He gives public talks as a Jehovah's Witness and spends four hours typing his speeches on a laptop. (AR 56.) He "occasionally" or "sometimes" does door to door witnessing activities by walking for about an hour at a time. (AR 56–57, 738, 769.) The Court finds that these activities were reasonably considered by the ALJ to be inconsistent with Plaintiff's alleged inability to work due to constant, severe, debilitating low back pain. (AR 26.) Accordingly, the inconsistency between Plaintiff's activity level and his complaints was yet another clear and convincing reason to find his statements and testimony not credible. *See* 20 C.F.R. § 404.1529(c)(3); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).

For all of the foregoing reasons, the Court finds that the ALJ did not err in evaluating Plaintiff's subjective complaints.

## V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **May 31, 2022**                      /s/ *Sheila K. Oberto*
                                               UNITED STATES MAGISTRATE JUDGE